CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 06 2022

LAURA A. AUSTIN, CLERK
BY:  s/ H. MCDONALD
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| CYNTHIA ADAMS, NATHTEADRA ADAMS, DANIEL BRANNOCK, TONYA CRAIGHEAD, ADRIENNE HAGWOOD, CHARLES HAIRSTON, LESLIE DIANA KING, CHRISTINA KATRINA MARTIN, LINDSAY TAYLOR MOORE, LINDY MARIE PENN, KIMBERLY PRUITT, ABIGAIL REYNOLDS, WILLIE REYNOLDS, JR., ANGELA SMITH, PRECILLA STONE, and ROBIN WELLS, individually on behalf of themselves, and on behalf of all others similarly situated, *et al.*, | **Civil Action No.** 4:22CV00107 _____ **JURY TRIAL DEMANDED** |
| Plaintiffs, | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| v. | |
| NEGRIL INCORPORATED and LEGACY WELLNESS LLC, | **CLASS ACTION PURSUANT TO FED. R. CIV. PRO 23** |
| Defendants. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs, individually, and on behalf of all others similarly situated, including the current opt-in Plaintiffs (collectively "Plaintiffs"), respectfully move for judgment against Defendants Negril Incorporated ("Negril") and Legacy Wellness LLC ("Legacy") (collectively "Defendants"). Plaintiffs seek to recover compensation, double and/or triple damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b) and Va. Code Ann. §§ 40.1-29 (referred to herein as the Virginia Wage Payment Act, or VWPA), and 40.1-29.2 (the Virginia Overtime Wage Act, or

VOWA).

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the additional Virginia law claims are asserted as class actions under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

### Introduction

1.     This is a "hybrid" collective/class action to recover overtime wages, regular wages, liquidated damages, and other applicable damages brought pursuant to federal and state wage laws. The collective action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the class action under Federal Rule of Civil Procedure 23 is brought pursuant to the Virginia Wage Payment Act ("VWPA"), Va. Code § 40.1-29, and Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2, to recover unpaid overtime wages, regular wages, liquidated and/or treble damages, and other applicable damages.  Plaintiffs also seek to recover damages associated with independent contractor misclassification pursuant to Va. Code. § 40.1-28.7:7.

2.     This Complaint seeks relief for claims for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, ("FLSA") arising out of work that Plaintiffs individually, and others similarly situated, performed for the benefit and at the direction of Negril and Legacy.

3.     This Complaint seeks additional relief pursuant to Va. Code §§ 40.1-29, 40.1-29.1, and 40.1-28.7:7 to recover unpaid regular and overtime wages as well as damages associated with

misclassification.   These claims are brought as putative class action claims pursuant to Federal Rule of Civil Procedure 23.

4.      Plaintiffs bring this action as a hybrid collective and class action on behalf of themselves and others similarly situated. Plaintiffs ask that if this case is not certified as a collective or class action that they be permitted to proceed individually with their claims.

**Jurisdiction and Venue**

5.      This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and (c) in that the Plaintiffs may bring this action in any appropriate United States District Court. This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's state law claims arose from the same basis of operative fact and same controversies under the law. Pursuant to 28 U.S.C. § 1367(a), these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

6.      Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b) because a substantial part of the events and omissions giving rise to this lawsuit have taken place in the Danville Division of Western District of Virginia and because both Defendants' principal places of business are located in the Danville Division.

7.      Each Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

**Parties**

8.      Cythnia Adams is a resident of Roanoke, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. C.

3

Adams was an "employee" as defined by the FLSA and Virginia law from approximately November 2021-May 12, 2022.

9.      Nathteadra Adams is a resident of Axton, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. N. Adams was an "employee" as defined by the FLSA and Virginia law from approximately March 1, 2022-May 12, 2022.

10.      Daniel Brannock is a resident of Ridgeway, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. Brannock was an "employee" as defined by the FLSA and Virginia law from approximately mid-February 2022-May 12, 2022.

11.      Tonya Craighead is a resident of Martinsville, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Craighead was an "employee" as defined by the FLSA and Virginia law from approximately October 1, 2021 until May 12, 2022.

12.      Adrienne Hagwood is a resident of Martinsville, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. Hagwood was an "employee" as defined by the FLSA and Virginia law from approximately April 4, 2020-May 31, 2022.

13.      Charles Hairston is a resident of Axton, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Hairston was an "employee" as defined by the FLSA and Virginia law from approximately June 1, 2021 until May 12, 2022.

14.     Leslie Diana King is a resident of Greensboro, North Carolina who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. King was an "employee" as defined by the FLSA and Virginia law from approximately March 1, 2022 until May 12, 2022.

15.     Christina Katrina Martin is a resident of Martinsville, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Martin was an "employee" as defined by the FLSA and Virginia law from approximately February 1, 2022 until May 12, 2022.

16.     Lindsay Taylor Moore is a resident of Danville, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. Moore was an "employee" as defined by the FLSA and Virginia law from approximately December 2021-May 12, 2022.

17.     Lindy Marie Penn is a resident of Stuart, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Penn was an "employee" as defined by the FLSA and Virginia law from approximately March 1, 2022 until May 12, 2022.

18.     Kimberly Ann Pruitt is a resident of Stuart, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Pruitt was an "employee" as defined by the FLSA and Virginia law from approximately January 1, 2021 until May 12, 2022.

19.     Abigail Reynolds is a resident of Spencer, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants.

Reynolds was an "employee" as defined by the FLSA and Virginia law from approximately October 1, 2021 until May 12, 2022.

20.    Wille Reynolds, Jr. is a resident of Spencer, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Reynolds, Jr., was an "employee" as defined by the FLSA and Virginia law from approximately December 1, 2021 until May 12, 2022.

21.    Angela Smith is a resident of Collinsville, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Smith was an "employee" as defined by the FLSA and Virginia law from approximately October 1, 2021 until May 12, 2022.

22.    Precilla Stone is a resident of Danville, Virginia who performed labor within the last three years for the benefit of, at the direction of and under the supervision of, Defendants. Stone was an "employee" as defined by the FLSA and Virginia law from approximately May 1, 2021 until May 12, 2022.

23.    Robin Wells is a resident of Martinsville, Virginia who performed labor within the last three years for the benefit of, at the direction of, and under the supervision of, Defendants. Wells was an "employee" as defined by the FLSA and Virginia law from approximately January 1, 2022 until May 12, 2022.

24.    Defendant Negril is a Virginia corporation with its principal place of business in the City of Danville, Virginia.  Its corporate headquarters are located at 2601 N. Main Street, Danville, VA. Negril is in the business of providing services to individuals with intellectual disabilities (mental retardation, or dually diagnosed with mental illness) who's desire is to remain

in their homes or in a small unique group home with a home-like atmosphere. Negril meets the definition of "employer" with respect to the FLSA and all relevant Virginia Statutes.

25.    Defendant Legacy is a Virginia company with its principal place of business in Bassett, Virginia.  Its corporate headquarters are located at 290 Dalewood Dr., Basset, Virginia. Legacy is or was in the business of mental health advocacy, specializing in Mental Health Skill Building, Intensive In Home for children, Crisis Services, and assisting homeless individuals with rehousing, job readiness and effective shelter options. Legacy meets the definition of "employer" with respect to the FLSA and all relevant Virginia Statutes.

26.    Each Defendant is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

27.    Each Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

28.    Each Defendant has made more than $500,000 in sales made or business done in the calendar year.

<u>**Factual Allegations**</u>

29.    Legacy provided labor in the form of Qualified Mental Health Professionals ("QMHP"), Qualified Paraprofessionals Mental Health ("QPPMH"), case workers, care coordinators, back-up care coordinators, and other clinical staff that worked through a license held by Negril to service Negril clients. On information and belief, Legacy did not provide such individuals to any company other than Negril.

30.    The named Plaintiffs, and those similarly situated, were QMHPs, QPPMHs, case workers, care coordinators, back-up care coordinators, and other clinical staff who provided

necessary labor to provide mental health skill building and other services and who worked for the Defendants within the last three years.[1]

31.    The employment applications filled out by Plaintiffs, and those similarly situated, listed both Negril and Legacy as the employer.

32.    Negril's Employee Handbook which was given to Plaintiffs provided that:

a.  Negril had the power to terminate employees;

b.  Negril reserved the right to investigate an applicant's prior employment history, including but not limited to, conducting a reference check, conducting a background check, and reviewing a credit report;

c.  Negril maintained a personnel file on each employee; and

d.  Use of Equipment and Technology policies set forth in the handbook had to be followed. Upon information and belief, all equipment and facilities used by Plaintiffs belonged to Negril.

33.    Specifically, the employees supplied to Negril by Legacy would provide Negril clients with mental health skill building and daily living assistance. Each individual employed by Defendants would carry a caseload of Negril clients they were responsible for servicing and assisting consistent with each individual client's treatment plan.

34.    Client referral forms provided to Plaintiffs for their use in the course of performing their work, listed both Legacy and Negril.

---

[1] For the sake of ease all such individuals are referred to herein collectively as "Putative Plaintiffs."

35.    The hours spent servicing clients by Putative Plaintiffs were largely determined by client need and were set out by Medicaid.  Putative Plaintiffs were required to submit timesheets to Defendants reflecting their hours worked.

36.    Negril would bill Medicaid for the services provided by the Putative Plaintiffs. Negril would then pay Legacy who would then pay the Putative Plaintiffs for the time they worked.

37.    Legacy paid the Putative Plaintiffs on an hourly basis.

38.    Putative Plaintiffs were paid straight time for all hours worked and were not paid overtime regardless of whether they worked more than forty (40) hours in a week.

39.    Until approximately January of 2022, Putative Plaintiffs were classified as W-2 employees of Legacy. In or around January of 2022, Legacy reclassified a number of Putative Plaintiffs as 1099 independent contractors, including all Plaintiffs except Moore, Penn, Reynolds, and Reynolds, Jr. The employees were informed that they would need to go to 1099 status if they wished to work more than forty (40) hours a week.

40.    On information and belief, the reclassification occurred due to Defendants' recognition that overtime should have been paid to Putative Plaintiffs and was a ruse to avoid the appearance of further overtime exposure.

41.    Once reclassified as 1099 independent contractors, the duties performed by Putative Plaintiffs as well as their reporting structure were identical to when they were W-2 employees.  They were also provided the same benefit plans as when they were W-2 employees. Putative Plaintiffs continued to be paid straight time for all hours worked.

42.    Beginning in or around mid-April through mid-May of 2022, Defendants ceased paying Putative Plaintiffs. Putative Plaintiffs are owed approximately four (4) weeks of pay each.

At least one Plaintiff, Hagwood, worked an additional two weeks, May 15, 2022 to May 31, 2022, to transition client care files, and no payment was made for those remaining weeks either.

43.    Putative Plaintiffs were initially informed on May 12, 2022 by both Legacy and Negril that they were being laid off due to Negril losing the license they had been working under but would eventually be getting paid. Later that month, Legacy informed them that they would not be getting paid at all for the services rendered for the approximately four (4) weeks owed as Negril had lost the license they had been working under and had ceased paying Legacy.

44.    On information and belief, Legacy is no longer doing business while Negril remains a going concern.

45.    Plaintiff C. Adams worked approximately 45 hours a week at a rate of $25/hr and is owed back wages of at least $4,500 for the four weeks she worked unpaid. She is also owed overtime wages of at least $1,625 for the 26 weeks of work she was not paid overtime for.

46.    Plaintiff N. Adams worked approximately 15 hours a week at a rate of $16/hr and is owed back wages of at least $960.00 for the four weeks she worked unpaid.

47.    Plaintiff Brannock worked approximately 40-60 hours a week, often working closer to 60 hours per week, at a rate of $25/hr and is owed back wages of at least $5,000 for the four weeks he worked unpaid. He is also owed overtime wages of at least $1,500 for the 12 weeks of work he was not paid overtime for.

48.    Plaintiff Craighead normally worked approximately 32.5 hours a week at a rate of $22/hr and is owed back wages of at least $2,860.00 for the four weeks she worked unpaid. Moreover, during the weeks ending on January 1, January 8, January 22, January 29, and February

26, 2022 she worked a total of eighteen (18) hours of unpaid overtime for which she is owed at least $198.00.

49.     Plaintiff Hagwood worked approximately 45 hours a week at a rate of $19/hr and is owed back wages of at least $3,420.00 for the four weeks she worked unpaid. She is also owed overtime wages of at least $5,225.00 for the 110 weeks of work she was not paid overtime for.

50.     Plaintiff Hairston worked approximately 40 to 60 hours a week at a rate of $22 and $24/hr and is owed back wages of at least $5,760.00 for the four weeks he worked unpaid. He is also owed overtime wages of at least $3,324.00 for the approximately 22 weeks of work for which he was not paid overtime.

51.     Plaintiff King worked approximately 30 hours a week at a rate of $27/hr and is owed back wages of at least $3,240.00 for the four weeks she worked unpaid.

52.     Plaintiff Martin worked approximately 52 hours a week at a rate of $29/hr and is owed back wages of at least $2,485.71 for the four weeks she worked unpaid. She is also owed overtime wages of at least $6,032.00 for the 14 weeks of work she was not paid overtime for.

53.     Plaintiff Moore worked approximately 15-30 hours a week at a rate of $15/hr and is owed back wages of at least $1,350.00 for the four weeks she worked unpaid.

54.     Plaintiff Penn worked approximately 45 hours a week at a rate of $19/hr and is owed back wages of at least $488.57 for the four weeks she worked unpaid. She is also owed overtime wages of at least $3,420.00 for the 10 weeks of work she was not paid overtime for.

55.     Plaintiff Pruitt worked approximately 54 hours a week at a rate of $24/hr and is owed back wages of at least $5,184.00 for the four weeks she worked unpaid. She is also owed overtime wages of at least $11,904.00 for the 71 weeks of work she was not paid overtime for.

56.    Plaintiff Reynolds worked approximately 40 hours a week at a rate of $11.50/hr and is owed back wages of at least $1,840.00 for the four weeks she worked unpaid.

57.    Plaintiff Reynolds, Jr. worked approximately 32.5 hours a week at a rate of $11/hr and is owed back wages of at least $1,430.00 for the four weeks he worked unpaid.

58.    Plaintiff Smith worked approximately 51.5 hours a week at a rate of $24/hr and is owed back wages of at least $4,944.00 for the four weeks she worked unpaid.  She is also owed overtime wages of at least $4,396.29 for the 32 weeks of work she was not paid overtime for.

59.    Plaintiff Stone worked approximately 42.5 hours a week at a rate of $25/hr and is owed back wages of at least $4,250.00 for the four weeks she worked unpaid. She is also owed overtime wages of at least $1,678.57 for the 54 weeks of work she was not paid overtime for.

60.    Plaintiff Wells worked approximately 60 hours a week at a rate of $27/hr and is owed back wages of at least $6,480.00 for the four weeks she worked unpaid. She is also owed overtime wages of at least $5,052.86 for the 19 weeks of work she was not paid overtime for.

61.    On information and belief, there are up to 80 additional individuals who were employed by Defendants as QMHPs, QPPMHs, case workers, care coordinators, back-up care coordinators, or other clinical staff and who were also subject to Defendants' improper policy of not paying overtime and/or subject to Defendants' failure to pay any compensation for the approximately four (4) weeks mentioned above.

62.    Negril and Legacy were each the employer with respect to the Plaintiffs and those similarly situated.

63.    Plaintiffs, and those similarly situated, were non-exempt hourly employees of Defendants. They were not employed in any bona fide executive, administrative, or professional capacity.

64.    Defendants willfully violated the FLSA by knowingly failing to pay minimum wages and/or overtime.

65.    At all relevant times, Defendants intended to deprive Plaintiffs and similarly situated individuals of the minimum wages and/or overtime pay to which they were entitled or acted with reckless disregard for the rights of Plaintiffs and those similarly situated.

## Collective Action Allegations

66.    Plaintiffs bring their FLSA claim as a collective action and their consents to join this collective action as representative Plaintiffs are attached as **Exhibit A**.[2]

67.    The collective action is defined as follows:

> All QMHPs, QPPMHs, case workers, care coordinators, back-up care coordinators, and other clinical staff who were paid by Legacy for work performed on behalf of Negril clients within three years preceding the filing of this complaint and who file a consent form to participate in this lawsuit ("Collective Action Members").

68.    Plaintiffs are similarly situated to the potential Collective Action Members because they were paid in the same manner, performed the same primary job duties, and were subject to identical employment policies and practices and terms and conditions of employment.

69.    Plaintiffs, and those similarly situated, performed the same primary job duties, were not paid overtime in accordance with the FLSA, and instead were paid straight time for all hours worked.

---

[2] All consent forms for the representative Plaintiffs are attached save for Hagwood and Wells, which are anticipated to be forthcoming.

70.    Plaintiffs (save for Moore, Penn, Reynolds, and Reynolds, Jr.), and those similarly situated were misclassified as independent contractors effective on or around January 1, 2022. As independent contractors, Defendants still failed to pay such individuals overtime in accordance with the FLSA.

71.    Numerous other individuals who performed the same primary job duties as Plaintiffs in the last three years worked over 40 hours in individual workweeks and were paid no overtime.

72.    Defendants have names, addresses, phone numbers, and email addresses for potential Collective Action Members in their payroll or personnel records.

73.    Defendants are aware or should have been aware that the FLSA required it to pay potential Collective Action Members overtime if they are employees. Defendants are or should have been further aware that their late-adopted misclassification scheme did not insulate them from having to pay overtime.

74.    Based on the clients serviced, the hours billed, and the time sheets submitted, Defendants had actual or constructive knowledge that the Collective Action Members spent more than 40 hours per week working for Defendants.

<u>**Class Action Allegations**</u>

**Class Definition**

75.    Plaintiffs, the Rule 23 Class Representatives, seek to maintain claims pursuant to Va. Code §§ 40.1-28.7:7 (only those Plaintiffs who became misclassified as 1099 employees), 40.1-29, and 40.1-29.2, individually, and on behalf of classes of employees who worked for Defendants and who:

        a.   During any time since August 22, 2019 were misclassified as independent contractors of the Defendants.

        b.   During any time since August 22, 2019 were denied overtime compensation despite working more than forty (40) hours in a single workweek.

        c.   Were not paid any compensation for the approximately four (4) weeks first referenced in Paragraph 40, above.

76.    On information and belief, there is substantial overlap in the classes referenced above, as Plaintiffs and all others similarly situated were made to assent to the same violative policies and practices (i.e., failure to pay overtime and regular wages) with only dates of tenure and (mis)classification status as the differentiators.

**Efficiency of Class Prosecution of Common Claims**

77.    Certification of subclasses is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed subclasses. Conversely, proceeding on an individual basis will require the filing of potentially scores of duplicative individual suits which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

**Numerosity and Impracticality of Joinder**

78.    The subclasses which the Class Representatives seek to represent are so numerous that joinder is impracticable. On information and belief, the putative subclasses during the liability periods number over 80 eligible individuals who were misclassified and/or paid/treated as independent contractors by the Defendants, and/or who were subject to underpayment (or nonpayment) of regular and overtime wages.

**Common Questions of Law and Fact**

79.     Defendants' overtime payment practices/lack thereof and the propriety of their classification scheme present common issues of fact and law in this matter.

**Typicality of Claims and Relief Sought**

80.     The claims of the Class Representatives are typical of those of the class members as a whole in that their claims are based on the same business and compensation practices. The relief sought by the Class Representatives for unpaid wages and misclassification compensation is also typical of the relief which is sought on behalf of the proposed subclasses.

**Adequacy of Representation**

81.     Plaintiffs are adequate class representative for all subclasses. Their interests are co-extensive with those of the members of the proposed subclasses they seek to represent. Additionally, there is substantial overlap amongst the membership of the subclasses. Plaintiffs have knowledge of the job duties performed and hours worked, as well as the compensation and classification policies at issue. They are committed to being representatives of the subclasses and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

**Rule 23(B)(3) Requirements**

82.     Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of compensation practices, as well as Defendants' practice of treating numerous Putative Plaintiffs as independent contractors.  Such policies and practices are applicable to all putative subclass members.

83.     A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiffs' would clog the Court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

84.     The putative subclass members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized compensation practices and their recovery in either an individual or class action will be based on the amount of wages, overtime compensation, or other damages that each Plaintiff has been denied by Defendants.

85.     The Class Representatives and counsel are not aware of any other pending litigation concerning the controversy involving proposed subclass members within the Commonwealth of Virginia.

86.     It is desirable to concentrate the claims in this forum because the employment practices complained of with respect to the Class Representatives occurred in this forum.

87.     The Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

**COUNT I**
**Violation of the Fair Labor Standards Act Failure to Pay Overtime Compensation**
**(Collective Action)**

88.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

89.     This count arises from Defendants' violation of the FLSA by failing to pay overtime to Plaintiffs and the Collective Action Members when they worked over 40 hours in individual workweeks.

90.     The Collective Action Members were not exempt from the overtime provisions of the FLSA.

91.     Plaintiffs, and others similarly situated, were directed by Defendants to work, and did work, over 40 hours in one or more individual workweeks.

92.     Defendants paid Plaintiffs, and others similarly situated, on a straight time only basis and did not pay them overtime compensation.

93.     Defendants violated the FLSA by failing to pay overtime to Plaintiffs, and others similarly situated, at one-and-one-half times their regular rate of pay when they worked over 40 hours in one or more individual workweeks.

94.     Defendants' failure to pay Plaintiffs and other similarly situated persons one-and-one-half times their regular rate for all time worked over 40 hours in a workweek was willful.

95.     Plaintiffs, and all others similarly situated, are entitled to back pay for all overtime hours worked during their employment with Defendants in an amount equal to one and one-half times their regular rate(s) of pay.

96.     As a result of Defendants' willful and reckless actions, Plaintiffs and all others similarly situated, are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b).

97.     Plaintiffs, and all others similarly situated, are entitled to recover attorney's fees pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**Violation of Va. Code § 40.1-28.7:7**
**(State Law Misclassification Class Action)**

98.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

99.     Va. Code § 40.1-28.7:7 permits misclassified workers to bring an action for damages against violating employers.

100.    Plaintiffs, and others similarly situated, performed services for Defendants for remuneration.

101.    Plaintiffs (except for Moore, Penn, Reynolds, and Reynolds, Jr.), and others similarly situated, were misclassified as independent contractors despite not meeting the "Internal Revenue Service guidelines" for evaluating independent contractor status.

102.    Plaintiffs (except for Moore, Penn, Reynolds, and Reynolds, Jr.), and others similarly situated, are entitled to damages caused by such misclassification, including wages, salary, employment benefits, and impermissible chargebacks or deductions or other compensation lost, plus reasonable attorneys' fees and costs incurred in bringing this action.

**COUNT III**
**Violation of Va. Code § 40.1-29.2**
**(Virginia Overtime Wage Act Class Action)**

103.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

104.    Defendants have knowingly violated the Virginia Overtime Wage Act, Va. Code § 40.1-29.2, by failing to pay overtime to Plaintiffs and the Class Members when they worked over 40 hours in individual workweeks.

105.    Plaintiffs, and all others similarly situated, were not exempt from the overtime provisions of Va. Code § 40.1-29.2.

106.    Plaintiffs, and others similarly situated, were directed by Defendants to work, and did work, over 40 hours in one or more individual workweeks.

107.    Defendants paid Plaintiffs, and others similarly situated, straight time only and did not pay them overtime compensation.

108.    Defendants violated Va. Code § 40.1-29.2 by failing to pay overtime to Plaintiffs, and others similarly situated, at one-and-one-half times their regular rate of pay when they worked over 40 hours in one or more individual workweeks.

109.    Defendants' failure to pay Plaintiffs and other similarly situated persons one-and-one-half times their regular rate for all time worked over forty (40) hours in a workweek was willful or knowing.

110.    Pursuant to Va. Code §§ 40.1-29(J) and 40.1-29.2, Plaintiffs and others similarly situated are entitled to recover payment of their unpaid overtime wages, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees.  Further, Defendants' violation was

a "knowing" one thus entitling Plaintiffs and others similarly situated to recovery of triple damages.

111.    Plaintiffs bring this action for all violations alleged herein commencing July 1, 2021 through June of 2022.

**COUNT IV**
**Violation of Va. Code § 40.1-29**
**(Unpaid Wages Class Action)**

112.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth fully herein.

113.    Defendants knowingly violated Va. Code § 40.1-29 by failing to pay Plaintiffs and other similarly situated persons the regular wages for necessary and compensable time spent working for Defendants.

114.    Plaintiffs and other similarly situated persons were not paid at all for the approximately four (4) weeks mentioned above.

115.     Pursuant to Va. Code § 40.1-29(J), Plaintiffs and other similarly situated persons are entitled to recover their unpaid and/or deducted wages, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees.  Further, Defendants' violation was a "knowing" one thus entitling Plaintiffs and other similarly situated persons to recovery of triple damages.

116.    Plaintiffs bring this action for all violations alleged herein commencing July 1, 2020 through June of 2022.

WHEREFORE, Plaintiffs, on behalf of themselves and the Collective and/or Class Action Members, request the following relief against Defendants:

A.    That the Court conditionally certify this action as a Collective Action under the

21

FLSA and order that Court approved notice be issued to putative Collective Members;

B.      All unpaid overtime due to Plaintiffs and the Collective Action Members;

C.      Liquidated damages equal to the unpaid overtime compensation due to Plaintiffs and the Collective Action Members;

D.      That the Court certify this action as a Class Action Pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.      All unpaid wages and overtime damages due to Plaintiffs and members of the Virginia Law Class Action claims;

F.      All unpaid wages, salary, or benefits due as result of Defendants' misclassification scheme;

G.      Liquidated damages equal to the unpaid overtime and/or unpaid wage compensation due under Va. Code § 40.1-29(J) and 40.1-29.2;

H.      Treble damages under Va. Code § 40.1-29(J) for all claims where such relief is available;

I.      Damages caused by such misclassification, including wages, salary, employment benefits, and impermissible chargebacks or deductions or other compensation lost;

J.      Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit pursuant to the FLSA and/or Virginia law; and

K.      Such other relief as the Court deems appropriate.


**Jury Demand**

Plaintiffs demand a trial by jury.

Respectfully Submitted,

CYNTHIA ADAMS, NATHTEADRA
ADAMS, DANIEL BRANNOCK, TONYA
CRAIGHEAD, ADRIENNE HAGWOOD,
CHARLES HAIRSTON, LESLIE DIANA
KING, CHRISTINA KATRINA MARTIN,
LINDSAY TAYLOR MOORE, LINDY
MARIE PENN, KIMBERLY PRUITT,
ABIGAIL REYNOLDS, WILLIE
REYNOLDS, JR., ANGELA SMITH,
PRECILLA STONE, and ROBIN WELLS,
individually on behalf of themselves,
and on behalf of all others
similarly situated,


By:_____/s/_____
Brittany M. Haddox (VSB No. 86416)
Monica L. Mroz (VSB No. 65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
brittany@strelkalaw.com
monica@strelkalaw.com

Craig J. Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel:    (804) 648-4848
craig@butlercurwood.com
zev@butlercurwood.com

*Counsel for Plaintiffs*