UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

---

CYNTHIA ADAMS, *et al.*, individually on behalf of
themselves, and on behalf of all others
similarly situated, *et al.*,

                             Plaintiffs,

v.

                                                      **Civil Action No. 4:22-cv-107**

NEGRIL INCORPORATED
and LEGACY WELLNESS LLC,

                             Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR <u>SETTLEMENT APPROVAL</u>

Plaintiffs and Defendant Negril Incorporated ("Negril", and collectively with Plaintiffs, the "Parties"), have settled this wage and hour action for $360,000.00. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") settlement because it is a fair and reasonable resolution of a bona fide dispute and is the result of arms-length settlement negotiations conducted by counsel well-versed in wage and hour law and with the assistance of Magistrate Judge Memmer.

For the reasons set forth below, the parties respectfully request that the Court enter an order approving the $360,000 settlement detailed in the Settlement Agreement and Release of Claims (the "Settlement Agreement"). For the Court's convenience, the Settlement Agreement is attached as Exhibit A.

## **PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS**

### I.     **Factual Allegations**

Plaintiffs are former employees or independent contractors of Legacy Wellness, LLC who performed services that were billed to payors under Negril's mental health skill building license. Negril  remitted 75% of the income received from such payors to Legacy Wellness, LLC. Negril retained the remaining 25% of such income. In May of 2022, the governing licensure board determined that the arrangement of Legacy Wellness, LLC performing services that were billed to payors under Negril's license was not permissible, and at the direction of the licensure board, Negril ceased its arrangement with Legacy Wellness, LLC. Ultimately, Plaintiffs were not paid for several weeks of work performed around the time of the shutdown. In addition, certain Plaintiffs have alleged that they were not paid overtime compensation despite that they were paid on an hourly basis. Certain Plaintiffs have also alleged that they were misclassified as independent contractors. Plaintiffs have alleged that Negril was Plaintiffs' joint employer. Defendant Negril Incorporated denies that it was a joint employer and denies that it had actual control over, or any right to exert control over, Plaintiffs' compensation, work schedule, or other employment terms. Defendant Legacy Wellness, LLC is in default, and, upon information and belief, is no longer operating and has no assets.

### II.     **Overview of Investigation, Litigation, and Settlement Negotiations**

The instant lawsuit was filed on September 6, 2022.

The Parties exchanged well over 20,000 pages of documents in discovery, with the Plaintiffs individually answering discovery, and numerous subpoenas being served on third parties. The parties also conducted 10 depositions. Plaintiffs' counsel calculated the available damages for each Plaintiff and had sufficient time records in order to do so.

Just before proceeding into dispositive motions practice, the Parties agreed to mediate the matter, and ultimately held a mediation with Magistrate Judge Memmer on February 14, 2024. In addition to counsel, a representative for the Plaintiffs attended the mediation, as did the owners of Negril, Incorporated. After negotiating into the evening hours, the parties eventually agreed to the proposed holistic settlement now before the Court.

## SUMMARY OF THE KEY SETTLEMENT TERMS

**The Settlement Amount(s)**

Defendant Negril has agreed to pay a total of $360,000 to settle this dispute. That amount will be allocated as follows: (i) payment to Plaintiffs' counsel's a total of $139,335.05[1] for fees and $7,942.69 for costs, and (ii) total settlement payment to Plaintiffs of $212,722.26, including each Plaintiff receiving their overtime compensation and unpaid wages through June 12, 2022, a service award to Charles Hariston and Angela Smith (Martin), each in the amount of $1,000,[2] and the few individuals who participated in the matter but ultimately did not have compensable damages receiving a nominal award of $250; each plaintiff will receive half their payment as W-2 and the other half as 1099, for claimed liquidated damages, and the service awards and nominal damages will be paid as 1099.

A chart with the damages and payments for each Plaintiff follows.

---

[1] This amount is below Plaintiffs' counsel's current lodestar of approximately $210,000.

[2] Charles Hairston and Angela Smith (Martin) initially consulted with Strelka Employment Law and were the individuals who started the matter, despite additional Plaintiffs joining before suit was filed.

| Name | Overtime Damages | Unpaid Wages Through June 12, 2022 | Service Awards | Nominal Participation Payment | Total Payment | W-2 Payment | 1099 Payment |
|---|---|---|---|---|---|---|---|
| Cynthia Adams | $1,972.50 | $2,775.00 | | | $4,747.50 | $2,373.75 | $2,373.75 |
| Nathteadra Adams | 0 | $1,680.00 | | | $1,680.00 | $840.00 | $840.00 |
| Alisha Arbogast | $3,931.50 | $2,640.00 | | | $6,571.50 | $3,285.75 | $3,285.75 |
| Melissa Archer | 0 | 0 | | $250 | $250.00 | | $250 |
| Melissa Barley | $34.13 | $2,200.00 | | | $2,234.13 | $1,117.07 | $1,117.07 |
| Robin Berry | 0 | 0 | | $250 | $250 | | $250 |
| Lesia Black | 0 | $3,744.00 | | | $3,744.00 | $1,872.00 | $1,872.00 |
| Daniel Brannock | $1,181.25 | $2,475.00 | | | $3,656.25 | $1,828.13 | $1,828.13 |
| Carlita Britten | 0 | $1,975.00 | | | $1,975.00 | $987.50 | $987.50 |
| Jerelle Carter | $312.00 | $2,938.00 | | | $3,250.00 | $1,625.00 | $1,625.00 |
| Michelle Chidester | $475.00 | $2,938.00 | | | $3,413.00 | $1,706.50 | $1,706.50 |
| Tonya Craighead | $176.00 | $1,122.00 | | | $1,298.00 | $649.00 | $649.00 |
| Lindsey D'Antuono | $66.00 | $4,240.00 | | | $4,306.00 | $2,153.00 | $2,153.00 |
| Twyla Dillard | $0.00 | $2,222.00 | | | $2,222.00 | $1,111.00 | $1,111.00 |
| Miesha Edwards | $2,493.75 | $3,875.00 | | | $6,368.75 | $3,184.38 | $3,184.38 |
| Kate Feuchtenberger | 0 | 0 | | $250 | $250 | | $250 |
| Kimberly Graves | 0 | $563.75 | | | $563.75 | $281.88 | $281.88 |
| Adrienne Hagwood | $2,102.25 | $3,087.00 | | | $5,189.25 | $2,594.63 | $2,594.63 |
| Charles Hairston | $5,250.00 | $2,880.00 | $1,000 | | $9,130.00 | $4,065.00 | $5,065.00 |
| LeVair Hairston | $262.75 | $2,775.00 | | | $3,037.75 | $1,518.88 | $1,518.88 |
| Tekecia Hairston | 0 | $2,050.00 | | | $2,050.00 | $1,025.00 | $1,025.00 |
| Shelby Hatcher | $4,088.50 | $2,800.00 | | | $6,888.50 | $3,444.25 | $3,444.25 |
| Brandon Helms | 0 | $300.00 | | | $300.00 | $150.00 | $150.00 |
| Shonna Higgins | 0 | $2,223.00 | | | $2,223.00 | $1,111.50 | $1,111.50 |
| Cara Hite | $2,325.88 | $3,480.00 | | | $5,805.88 | $2,902.94 | $2,902.94 |
| Tennille Jamison | 0 | $750.00 | | | $750.00 | $375.00 | $375.00 |
| Delorise Jordan | $6,704.00 | $3,240.00 | | | $9,944.00 | $4,972.00 | $4,972.00 |
| Leslie King | 0 | $2,052.00 | | | $2,052.00 | $1,026.00 | $1,026.00 |
| Christina Martin | $2,234.25 | $3,240.00 | | | $5,474.25 | $2,737.13 | $2,737.13 |
| Teonna McCall | 0 | $861.00 | | | $861.00 | $430.50 | $430.50 |
| Makia McGee | $7,089.50 | $3,840.00 | | | $10,929.50 | $5,464.75 | $5,464.75 |
| JaLexus Mitchell | $1,173.00 | $2,760.00 | | | $3,933.00 | $1,966.50 | $1,966.50 |
| Lindsay Moore | 0 | $600.00 | | | $600.00 | $300.00 | $300.00 |
| Kenneth Moyer | $4,289.00 | $2,640.00 | | | $6,929.00 | $3,464.50 | $3,464.50 |
| Arlisa Nelson | 0 | 0 | | $250 | $250 | | $250 |
| Rebecca Newman | 0 | $1,680.00 | | | $1,680.00 | $840.00 | $840.00 |
| Lindy Penn | $1,064.50 | $2,052.00 | | | $3,116.50 | $1,558.25 | $1,558.25 |
| Courtney Pennix | 0 | $2,480.00 | | | $2,480.00 | $1,240.00 | $1,240.00 |
| Tammy Pillow | 0 | $1,800.00 | | | $1,800.00 | $900.00 | $900.00 |
| Kimberly Pruitt | $5,728.00 | $2,880.00 | | | $8,608.00 | $4,304.00 | $4,304.00 |
| Abigail Reynolds | $20.00 | $1,138.50 | | | $1,158.50 | $579.25 | $579.25 |
| Willie Reynolds | 0 | $880.00 | | | $880.00 | $440.00 | $440.00 |
| Tamika Satterwhite | $2,632.50 | $1,524.00 | | | $4,156.50 | $2,078.25 | $2,078.25 |
| Tiffany Saunders | 0 | $1,740.00 | | | $1,740.00 | $870.00 | $870.00 |
| Angela Smith (Martin) | $5,734.00 | $2,880.00 | $1,000 | | $9,614.00 | $4,307.00 | $5,307.00 |
| Shyron Smith | 0 | $760.00 | | | $760.00 | $380.00 | $380.00 |
| Jacqueline Stokes | $336.00 | $1,920.00 | | | $2,256.00 | $1,128.00 | $1,128.00 |
| Precilla Stone | $962.00 | $2,525.00 | | | $3,487.00 | $1,743.50 | $1,743.50 |
| Lisa Swain | $2,736.00 | $1,056.00 | | | $3,792.00 | $1,896.00 | $1,896.00 |
| Ernest Swanson | 0 | $16,156.00 | | | $16,156.00 | $8,078.00 | $8,078.00 |
| Shannon Taylor | 0 | $1,260.00 | | | $1,260.00 | $630.00 | $630.00 |
| Linda Vargas | 0 | $968.00 | | | $968.00 | $484.00 | $484.00 |
| Peter Wallace | $1,198.75 | $7,630.00 | | | $8,828.75 | $4,414.38 | $4,414.38 |
| Robin Wells | $4,868.50 | $3,120.00 | | | $7,988.50 | $3,994.25 | $3,994.25 |
| Tamia Wells | $346.50 | $2,163.00 | | | $2,509.50 | $1,254.75 | $1,254.75 |
| Donte White | 0 | $5,681.00 | | | $5,681.00 | $2,840.50 | $2,840.50 |
| Amber Wimbish | 0 | $675.00 | | | $675.00 | $337.50 | $337.50 |
| **TOTAL** | | | | | $212,722.26 | $104,861.13 | $107,861.13 |

**Release**

The parties have agreed to a release that is properly tailored to only release the wage and hour claims at issue.

**Denial of Liability**

The settlement acknowledges that Negril denies liability to Plaintiffs and the settlement of this matter should in no way be construed as an admission of liability.

<u>ARGUMENT</u>

**I.    The Settlement Meets the Requirement for Approval of an FLSA Settlement.**

Settlement of an FLSA lawsuit must be approved by the U.S. Department of Labor or a federal district court. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005)). Courts in the Western and Eastern District of Virginia have traditionally taken their direction from the Eleventh Circuit and have held that an FLSA settlement should be approved if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Furthermore, when the parties' settlement, as here, reflects "a reasonable compromise over the issues the court may approve it in order to promote the policy of encouraging settlement of litigation." *Kuntze v. Josh Enters., Inc.*, No. 2:18cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (internal markings omitted) (citing *Lynn Food Stores*, 679 F.2d at 1354).

This settlement represents a good faith compromise of the parties' bona fide dispute of liability and damages under the FLSA. Furthermore, the proposed settlement terms are fair and reasonable, and the settlement was reached after arms-length negotiation and with the assistance

of Magistrate Judge Memmer. For these reasons and based on the foregoing, the parties request that the Court approve the Settlement Agreement.

### A.       There is a Bona Fide Dispute over FLSA Provisions.

To merit Court approval, the settlement must involve a bona fide dispute over FLSA provisions. *See Patel*, 15 F. Supp. 3d at 654 (citing *Lynn Food Stores*, 679 F.2d at 1355). In this action, Plaintiffs allege that they were not paid regular compensation, overtime compensation, and were misclassified in violation of the FLSA (and Virginia law). As the Court has noted, "[a] bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009). Furthermore, Defendant Negril has consistently denied and continues to deny that they are a joint employer and liable to Plaintiffs. The Settlement Agreement contains a provision wherein Negril expressly denies any and all liability to Plaintiffs. As such, this settlement represents a good faith compromise of the parties' bona fide dispute regarding the FLSA claims alleged in the Complaint.

### B.       The Settlement is Fair and Reasonable.

"In determining whether a settlement is fair, adequate, and reasonable there is a *strong presumption* in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *LaFleur*, 189 F. Supp. 3d at 593 (emphasis added) (internal markings and citations omitted). Those factors to be considered when assessing whether an agreement is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of the counsel who have represented the plaintiff; (5) the probability of plaintiffs' success on the merits; and (6) the amount

of the settlement in relation to the potential recovery. *Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975). As detailed below, all factors point toward approval in this case.

### 1. The Extent of Discovery that has Taken Place.

The Parties exchanged more than 20,000 pages of documents in discovery, in addition to documents received pursuant to subpoenas served by the Parties, and the Parties conducted 10 depositions. Named Plaintiffs and opt in Plaintiffs answered individual discovery requests served upon them by Negril. As a result, the parties had all the information they needed to evaluate and calculate the damages at issue and to determine whether settlement made legal and/or business sense. The extensive discovery thus weighs in favor of approval.

### 2. The Stage of the Proceedings.

Just before proceeding into dispositive motions practice, the Parties agreed to mediate the matter, and ultimately held a mediation with Magistrate Judge Memmer on February 14, 2024.

Because this lawsuit involves the legal issue of joint employment liability, and a defunct entity that is in default, there are several important issues that would have required significant litigation had the matter not settled. Extensive time and energy would have gone into the dispositive motions briefing related to the issue of joint employment.

If the litigation had progressed to trial, it would have been complex and expensive. This settlement provides meaningful recovery to Plaintiffs and avoids the risk of loss given that Negril takes the position that it was not a joint employer and Legacy Wellness, LLC is in default, is not operating, and is not known to have any assets. From Negril's perspective, settlement eliminates further exposure to fees, the potential of Rule 23 Class Certification, and the potential for liquidated damages, triple damages, interest, and misclassification damages if the Court were to find Negril  to be a joint employer. From the Plaintiffs' perspective, settlement means that the

Plaintiffs receive their actual overtime compensation damages and unpaid wages, and it eliminates the possibility that the Court finds that Negril is not a joint employer and Plaintiffs are left with a Defendant, Legacy Wellness, LLC, who likely has no assets. Finally, both Plaintiffs and Negril likely would have appealed any adverse ruling on the issue of joint employment.

### 3.  The Absence of Fraud or Collusion.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12; *see also Kuntze*, 2019 WL 2179220, at *2. The parties negotiated this settlement at arms-length, with the assistance of Magistrate Judge Memmer, over a period of months leading up to the mediation and into the evening hours on the day of the mediation. This case has been hard fought by both sides and was not settled until discovery was fully conducted and all damages could be calculated. Thus, there is no evidence to outweigh the presumption that no collusion occurred between counsel.

### 4.  The Experience of Counsel of Record.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn*, 528 F.2d at 1173 ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."). Plaintiffs' counsel are well-respected lawyers with a breadth of experience in the fields of employment litigation and wage and hour law. They have litigated a number of small and large overtime cases against public entities and private corporations, including, but not limited to:

> *Rogers, et al. v. City of Richmond*, 3:11CV620 (E.D. Va.)
> *Carroll, et al. v. County of Henrico*, 3:12CV00105 (E.D. Va.)
> *Devine, et al. v. City of Hampton*, 4:14CV81 (E.D. Va.)
> *Wright, et al. v. City of Roanoke*, 7:18CV210 (W.D. Va.)

*Lacroix, et al. v. City of Portsmouth, Virginia*, 2:13CV533 (E.D. Va.)
*Slavin, et al., v. United States Postal Service*, 3:17CV00134 (E.D. Va.)
*Milton, et al. v. Quality Eco Technologies, LLC*, 3:20CV43 (E.D. Va.)
*Yerby, et al. v. City of Richmond*, 3:19CV393 (E.D. Va.)
*Clinton, et al. v. GEICO*, 2:16CV430 (E.D. Va.)
*Mendoza, et al. v. Baird Drywall & Acoustic, Inc., et al.*, 7:19-cv-882 (W.D. Va.)
*Broussard v. Eldor Automotive Powertrain USA*, 7:19-cv-0841 (W.D. Va.)
*Pinon v. Kalyan Plaza, LLC, et al.*, 7:20-cv-205 (W.D. Va.)
*Sziber v. Dominion Energy, Inc.*, 3:20-cv-117 (E.D. Va.)
*Jones v. Harvest Roanoke LLC, et al.*, 7:22-cv-485 (W.D. Va.)
*Jones v. 573 LLC, et al.*, 7:22-cv-486 (W.D. Va.)
*Campbell, et al. v. Intercontinental Capital Group, Inc.*, 3:22-cv-00034 (E.D. Va.)
*Granderson, et al. v. Capital One Financial Corporation*, 3:21-800 (E.D. Va.)
*Denson, et al. v Elephant Insurance Services, LLC*, 3:22-cv-00022 (E.D. Va.)
*Wheaton v. Westminister-Canterbury of The Blue Ridge*, 3:22-cv-00050 (W.D. Va.)
*Hines, et al. v. ModivCare Solutions, LLC*, 3:23-cv-00273 (E.D. Va.)
*Adams, et al. v. Negril Incorporated, et al.*, 4:22-cv-00107(W.D. Va.)
*Walker v. Brooks Public Safety LLC, et al.*, 7:23-cv-00568 (W.D. Va.)
*Fortier v. Liberty University, Inc.*, 6:23-cv-00069 (W.D. Va.)
*Clifton et al v. ACME Therapies, Co.*, 4:22-cv-00113 (W.D. Va.)
*Raines, et al v. Zerodraft Maryland, LLC*, 7:23-cv-00477 (W.D. Va.)

Plaintiffs' counsel relied on a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the settlement. Based on Plaintiffs' counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour actions, Plaintiffs' counsel's opinion is that the settlement is fair, reasonable, and adequate and resolves a bona fide dispute. That opinion, based on extensive knowledge of employment law, is entitled to significant weight.[3]

### 5. The Probability of Plaintiffs' Success on the Merits.

With regard to the probability of success on the merits, when evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656. As

---

[3] Negril Incorporated's counsel also extensive experience representing Virginia employers in employment litigation including FLSA Collective and Class actions.

stated above, recovery in this matter is not guaranteed. Plaintiffs faced standard disputes regarding liquidated damages and willfulness as well unique disputes over whether Negril was Plaintiffs' joint employer as a matter of law. Although, in general, liability was fairly clear in this case, at least for certain claims, the potential loss of Negril as a defendant presented a significant hurdle for Plaintiffs with respect to collecting on their claims.  Thus, the probability of success on the merits factor weighs in favor of approval.

**6.  The Amount of the Settlement in Relation to the Potential Recovery.**

Each Plaintiff is receiving their overtime compensation, which was calculated using detailed time records, and their lost wages around the shutdown period, which was also calculated using detailed time records and input from Plaintiffs. Plaintiffs are not receiving additional damages, such as liquidated damages, triple damages, interest, or potential available damages for misclassification. However, Plaintiffs further enjoy the benefit of settlement far sooner than if this matter was to go to trial and through appeal, and receipt of this money has been long-awaited and desired by Plaintiffs. Additionally, Plaintiffs avoid the potential of the loss of Negril as a defendant, which likely would have meant a total loss of recovery in this matter. Consequently, this settlement brings considerable value and certainty now to Plaintiffs. The substantial benefit to Plaintiffs is a significant factor weighing in favor of approval of the proposed Settlement Agreement.

**7.  Plaintiffs' Attorneys' Fees and Costs.**

The FLSA provides in part that "the court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The settlement agreed to by the parties reflects this and rather than engaging in a time consuming and costly fight over the amount of attorneys' fees, the parties here

were able to reach a resolution that encompassed the claim for attorneys' fees and costs, with Plaintiffs' counsel agreeing to a reduction from their lodestar.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis v. BT Ams. Inc.*, No. 2:16cv206, 2017 WL 11506967, at *2-3 (E.D. Va. May 10, 2017). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis.[4] *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *LaFleur*, 189 F. Supp. 3d at 593. However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id.* (citing *Poulin*, 2010 1813497, at *1).

"In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001)). Here, even though the Plaintiffs believe the settlement to be a significant success given that each Plaintiff is

---

[4] "The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate." *LeFleur*, 189 F. Supp. 3d at 593 (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

receiving their overtime and regular wages, Plaintiffs' counsel's attorneys' fees and costs have been discounted from approximately $220,000 to approximately $147,000, with no additional fee recovery going forward through the settlement process.

## **CONCLUSION**

This Settlement was reached after continued settlement negotiations and a mediation. The Parties engaged in analysis of the facts and the data at issue and the Settlement Agreement provides Plaintiffs significant monetary relief. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved.

Respectfully submitted,

By: _____/s/_____
Brittany M. Haddox (VSB No. 86416)
Monica L. Mroz (VSB No. 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
brittany@strelkalaw.com
monica@strelkalaw.com

Craig J. Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: (804) 648-4848
craig@butlercurwood.com
zev@butlercurwood.com

*Counsel for Plaintiffs*

By: _____/s/_____
Amanda M. Weaver
Virginia State Bar No. 86782
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6226
Facsimile: (804) 420-6507
aweaver@williamsmullen.com

*Counsel for Defendant Negril Incorporated*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2024, a copy of the foregoing was electronically

filed using the CM/ECF system, which provided electronic service to all counsel of record.


By _/s/ Brittany M. Haddox_____